Catherine M. SMITH, Plaintiff,

v.

MCI TELECOMMUNICATIONS CORPORATION, Defendant.

Civ. A. No. 87-2110.

United States District Court, D. Kansas.

Dec. 17, 1987.

824

Robert P. Numrich, Field, Gentry, Benjamin & Robertson, P.C., Overland Park, Kan., William G. Beck, Field, Gentry, Benjamin & Robertson, P.C., Kansas City, Mo., for plaintiff.

Roger D. Stanton, Mark D. Hinderks, Stinson, Mag & Fizzell, Overland Park, Kan., Robert L. Driscoll, Christopher F. Pickering, Stinson, Mag & Fizzell, Kansas City, Mo., Marianne Geeker, MCI Telecommunications, Washington, D.C., for defendant.

MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter is before the court on the motion of defendant MCI Telecommunications Corporation (hereinafter "MCI") to dismiss the first amended complaint of plaintiff Catherine M. Smith (hereinafter "Smith").

The gravamen of Smith's class action against MCI is that MCI systematically cheated its salespersons by failing to pay them proper commissions. The amended complaint includes the following counts: (1) a claim under the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C. §§ 1961–1968, (2) a common law fraud claim based on MCI's acts underlying the RICO claim, (3) a claim for breach of contract based on MCI's failure to pay employees' commissions, (4) a common law fraud claim related to MCI's employment contracts, and (5) a breach of contract claim based on the employment contracts.

MCI moves for dismissal, alleging that Count 1 fails to state a claim for relief under RICO, that Counts 2 and 4 fail to state claims on which relief may be granted, and that the court lacks subject matter jurisdiction over Counts 3 and 5.

The court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, all well-pleaded facts, as distinguished from conclusory allegations, must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). Our inquiry in reviewing the sufficiency of Smith's complaint is not whether she will ultimately prevail, but whether she is entitled to offer evidence to support her claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

I. *Count 1: The RICO Claim.*

MCI asserts that Smith's RICO claim should be dismissed because it fails to identify with sufficient particularity MCI's alleged wrongdoing, establish a pattern of alleged racketeering activities, identify an enterprise separate from MCI, and establish that Smith's injuries were caused by MCI's alleged racketeering activities. MCI's motion and both parties' memoranda primarily address Smith's alleged RICO injuries and whether claims arise from them; the class and its claims are not discussed in detail. Thus this portion of the court's order will focus only on Smith's claims.

Smith must plead her RICO allegations based on fraud with particularity. *See* Fed.R.Civ.P. 9(b); *Smith v. Mark Twain Bankshares,* 84–4282–S (D.Kan., *unpublished,* Mar. 27, 1986) (citing *Otto v. Variable Annuity Life Ins. Co.,* 611 F.Supp. 83, 89 (N.D.Ill.1985). She must describe with specificity "the circumstances constituting the fraud, including such matters as the time, place, and content of the false representations, as well as the identity of the person making the representation and what was obtained or given thereby." *Smith v. Heim,* 85–1970–K (D.Kan., *unpublished,* April 15, 1986) [Available on WESTLAW, 1986 WL 15397] (citing *Van Dorn Co. v. Howington,* 623 F.Supp. 1548 (N.D.Ohio 1985)).

Smith's complaint is sufficiently particular. She alleges three specific dates, September 7, 11, and 19, 1984, when MCI assertedly entered accounts she sold into the commission-calculating computer without crediting her with the sales. She also alleges four specific sales where she was told that the customer, upon whose usage her commission was based, had slight usage entitling her to little or no commission, whereas the customer was billed for much greater usage. The discrepancies occurred in the accounts for American World Travel, Ash Battery Systems, Inc., Peachtree Doors, and Exide Battery. Because these allegedly fraudulent acts are not the statements or writings of a particular person, Smith need not specify who within MCI committed the acts. Her

pleadings as to the incidents sufficiently inform MCI of the specific nature of her allegations. *See N.L. Industries, Inc. v. Gulf & Western Industries,* 650 F.Supp. 1115, 1129–30 (D.Kan.1986).

We next address whether MCI's alleged acts constitute a pattern of racketeering activity. Smith asserts, and MCI denies, that the acts, which include perpetrating a fraud through use of the mail and wired communications, amount to a pattern of racketeering activity as defined by Title 18, United States Code, Section 1961(5). This section provides that a pattern requires at least two acts within ten years. 18 U.S.C. § 1961(5). The Supreme Court expounded on the pattern requirement in *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985):

> The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p. 158 (1969) (emphasis added).

*Id.* at 496 n. 14, 105 S.Ct. at 3285 n. 14.

In *Torwest DBC, Inc. v. Dick,* the Tenth Circuit held that a pattern requires continuous and related acts. *Torwest,* 810 F.2d 925, 928 (10th Cir.1987). Acts which are part of a common fraudulent scheme are related. *Id.* Here, the acts were related, as they were part of a common scheme to deprive Smith of the commissions she earned.

Continuity requires the threat of ongoing activity. *Id.* "A scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished." *Id.* at 929. The instant case involves a more difficult question: whether a pattern is presented where a scheme has no single objective and is directed toward one victim. *Id.* The *Torwest* court failed to answer the question, stating that it declined to "formulate a bright-line test" for determining whether a pattern exists. *Id.*

■ A review of decisions from other circuits does not yield a single approach. Some courts have held that fraudulent acts underlying RICO claims need not occur in different criminal episodes or schemes to satisfy the continuity requirement. *See, e.g., Bank of America v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986). Other courts have strictly required the predicate acts to be parts of different schemes. *See, e.g., Superior Oil Co. v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986).

We are persuaded by the Seventh Circuit's approach as stated in *Morgan v. Bank of Waukegan,* 804 F.2d 970 (7th Cir. 1986). There, the court steered a middle course, stating that "the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, *i.e.,* transactions somewhat separated in time and place." *Id.* at 975 (quotations omitted). The court continued:

> Relevant factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. *However, the mere fact that the predicate acts relate to the same overall scheme or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement.* The doctrinal requirement of a pattern of racketeering activity is a standard, not a rule, and as such its determination depends on the facts and circumstances of the particular case, with no one factor being necessarily determinative.

*Id.* at 975–76 (emphasis added). The court concluded that the plaintiffs had sufficiently pled a pattern of acts, including mail

fraud related to a loan transaction and two foreclosure sales occurring over the course of four years.

■ In the instant case, applying the above standards, we find sufficient allegation of a pattern. Although MCI's acts relate only to a single scheme to deprive Smith of her commissions, the acts were themselves separate occurrences, and the scheme, which would continue as long as Smith was employed, was open-ended. Dismissal for failure to allege a pattern is therefore unwarranted.

■ We next address whether, under 18 U.S.C. § 1962(a), the provision on which Smith bases her claim, the defendant and the enterprise may be the same entity. This section provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).

In this case, MCI is a person as defined by section 1961(3). It contends that the person and the enterprise mentioned in section 1962(a) must be distinct. Smith disagrees.

Courts generally hold that under section 1962(c), which provides that it is "unlawful for any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce to conduct ... such enterprise's affairs through a pattern of racketeering activity ...," 18 U.S.C. § 1962(c), the person and the enterprise must be distinct. *See, e.g., Bishop v. Corbitt Marine Ways, Inc.,* 802 F.2d 122, 123 (5th Cir.1986); *Schofield v. First Commodity Corp.,* 793 F.2d 28, 29–30 (1st Cir.1986); *United States v. Benny,* 786 F.2d 1410, 1415–16 (9th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 668, 93 L.Ed.2d 720; *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,*

474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). *But see United States v. Hartley,* 678 F.2d 961, 988 (11th Cir.1982), *cert. denied,* 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed. 2d 1014 (1983).

However, the language of section 1962(a) differs from that of section 1962(c), and courts have split over whether the person and the enterprise must be distinct under subsection (a). *Compare Schreiber Distributing Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1398 (9th Cir.1986) (corporate defendant can also be enterprise under section 1962(a)) *and Morgan,* 804 F.2d at 977 (same) *and Schofield,* 793 F.2d at 31 (same in dicta) *and Masi v. Ford City Bank & Trust Co.,* 779 F.2d 397, 401 (7th Cir.1985) (same) *and B.F. Hirsch, Inc. v. Enright Refining Co.,* 617 F.Supp. 49, 51–52 (D.N.J.1985) (same) *with United States v. Computer Sciences Corp.,* 689 F.2d 1181, 1190–91 (4th Cir.1982) (corporate defendant cannot also be enterprise under section 1962(a)), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983) *and H.J., Inc. v. Northwestern Bell Tel. Co.,* 648 F.Supp. 419, 426–28 (D.Minn.1986) (same) *and Rush v. Oppenheimer & Co.,* 628 F.Supp. 1188, 1196–98 (S.D.N.Y.1985) (same) *and Cashco Oil Co. v. Moses,* 605 F.Supp. 70, 71 (N.D.Ill.1985). The Tenth Circuit has not addressed the issue.

We are persuaded that the better approach is to not require that the defendant/person be distinct from the enterprise. Such an approach comports with the language of subsection (a) and the definitions of section 1961. Section 1961 defines a person to include a corporate defendant such as MCI, and it defines an enterprise to include a corporation. *See* 18 U.S.C. § 1961(3), (4). Section 1962(a) makes it unlawful for any person, here MCI, to use racketeering income in the operation of any enterprise engaged in interstate commerce, again, here MCI. The language does not dictate that the entity generating racketeering income and the entity using the income in its operations be distinct. *See Schreiber Distributing,* 806 F.2d at 1397–98; *Masi,* 779 F.2d at 401–02. Additionally, this approach furthers the purposes un-

derlying RICO. RICO was designed to attack systematic, corrupt influences on enterprises engaging in interstate commerce. Congress intended to reach both "legitimate," respected enterprises and "illegitimate" enterprises controlled by organized crime. *See Sedima,* 473 U.S. at 499, 105 S.Ct. at 3287. Given Congress' intent to reach "legitimate," respected enterprises engaged in a pattern of fraud, logic dictates that it intended to reach both those enterprises investing funds procured by fraud in other enterprises and those enterprises furthering their own operations with illgotten gains. Little sense can be made of a distinction which would punish a corporation tainting interstate commerce by investing fraudulent gains in another enterprise, while allowing the same corporation to taint interstate commerce by using fraudulent gains in its own operations. Thus we conclude that under section 1962(a), the person and the enterprise need not be distinct.

■ We next address whether section 1962(a) requires Smith to allege her damages were caused by MCI's use of the alleged racketeering proceeds, or whether she may state a claim based on damages resulting from the predicate acts. As with the question of whether the defendant and the enterprise must be distinct, the law applying to subsection (c) is better-settled than that applying to subsection (a).

The Supreme Court held in *Sedima* that a "racketeering injury" apart from the predicate acts was not required to recover under section 1964(c), which allows a private suit by a person injured by a violation of section 1962. *Sedima,* 473 U.S. at 495, 105 S.Ct. at 3285. The Court explained that section 1962 makes it unlawful to use money acquired from a pattern of racketeering to invest in an enterprise, 18 U.S.C. § 1962(a), to acquire control of an enterprise through a pattern of racketeering activity, *id.* § 1962(b), or to conduct an enterprise through a pattern of racketeering activity. *Id.* § 1962(c). The Court stated:

If the defendant engages in a pattern of racketeering activity in a manner forbid-

den by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language for an additional, amorphous "racketeering injury" requirement.

*Sedima,* 473 U.S. at 495, 105 S.Ct. at 3285. The Court then focused on section 1962(c), holding that "the compensable injury is the harm caused by the predicate acts ..., for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." *Id.* at 497, 105 S.Ct. at 3286.

A violation of subsection (a) involves more than the mere commission of the predicate acts; after the acts, the money obtained must be invested in or used in the operation of an enterprise engaging in or affecting interstate commerce. 18 U.S.C. § 1962(a). This "use" requirement has troubled courts addressing whether persons injured only by the predicate acts, not the use of the resulting funds, may recover under section 1962(a).

Some courts have held that the evident language differences in subsections (a) and (c) require different treatment of plaintiffs under the subsections. Typically, these courts hold that although a plaintiff may have suffered injury as a result of fraudulent acts, subsection (a) allows recovery only if the injury results from the use of the funds obtained by fraud. Thus a plaintiff injured only by the predicate acts cannot recover. *See, e.g., In re Gas Reclamation, Inc. Securities Litigation,* 659 F.Supp. 493, 511 (S.D.N.Y.1987); *Cincinnati Gas & Elec. Co. v. General Elec. Co.,* 656 F.Supp. 49, 83–84 (S.D.Ohio 1986); *Gilbert v. Prudential–Bache Securities, Inc.,* 643 F.Supp. 107, 109–10 (E.D.Pa.1986).

Other courts have held that injury resulting from the predicate acts suffices for recovery under subsection (a). *See, e.g., Haroco, Inc. v. American Nat'l Bank & Trust Co.,* 647 F.Supp. 1026, 1033 (N.D.Ill. 1986); *Louisiana Power & Light v. United Gas Pipe Line,* 642 F.Supp. 781 (E.D.La. 1986). We agree with these courts for the following reasons: First, the Supreme

Court's language in *Sedima* strongly suggests that the Court would allow those injured by predicate acts to recover under section 1962(a). Although the case involved a subsection (c) claim, the Court stated that "[i]f the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions [(section 1962(a)–(c))], and *the racketeering acts* injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c)." *Sedima,* 473 U.S. at 495, 105 S.Ct. at 3285 (emphasis added). Here, MCI allegedly engaged in a pattern of racketeering activities as prohibited by subsection (a), and Smith was allegedly injured as a result of these activities. Thus she should recover under section 1964(c).

Second, allowing recovery by Smith for alleged injuries resulting from the predicate acts conforms with the policy that RICO should be broadly interpreted. *See* Pub.L. 91–452, § 904(a), 84 Stat. 947, *cited in Sedima,* 473 U.S. at 498, 105 S.Ct. at 3286 (RICO should "be liberally construed to effectuate its remedial purposes").

Third, this approach effectively extends RICO to corporate defendants. Congress intended that RICO cover corporations engaged in racketeering activities. *See Sedima,* 473 U.S. at 499, 105 S.Ct. at 3287 (citing *United States v. Turkette,* 452 U.S. 576, 586–87, 101 S.Ct. 2524, 2530–31, 69 L.Ed.2d 246 (1981)). Given the weight of authority that under subsection (c), the defendant and the enterprise must be distinct, a RICO plaintiff seeking recovery against a corporate defendant must rely on subsections (a) and (b). However, if the plaintiff must be injured by the use of racketeering proceeds, rather than the underlying racketeering acts, only the competitors of the corporate defendant are likely to have standing. These competitors will, in most instances, be entirely unaware of the predicate acts. *See King v. E.F. Hutton & Co., RICO Business Disputes Guide (CCH)* ¶ 6578 (D.D.C.1987) [Available on WESTLAW, 1987 WL 8733]. Thus the racketeering corporation will fail to feel the sting of the civil treble damage action which Congress contemplated. Allowing

subsection (a) actions by persons injured by the predicate acts remedies this situation.

Fourth, the language of section 1962 and 1964(c) does not dictate that the plaintiff's injury be caused by the use of the racketeering proceeds. Section 1964(c) allows a person injured by a section 1962 violation to recover damages. When a corporation affecting interstate commerce commits racketeering acts and uses the proceeds in its operations, it has violated section 1962(a). A plaintiff injured by the predicate acts is injured as a result of the violation in spite of the fact that one element of the violation, the use of the proceeds, did not contribute to or cause his injury. *See Marshall & Ilsley Trust Co. v. Pate,* 819 F.2d 806, 809 (7th Cir.1987) (a plaintiff may recover under section 1964(c) by proving a violation of section 1962 and "an injury directly resulting from some or all of the activities comprising the violation;" the plaintiff need not prove that every act involved in a RICO pattern caused him a direct injury); *Haroco v. American Nat'l Bank & Trust Co.,* 747 F.2d 384, 396–98 (7th Cir.1984) (a plaintiff may recover under section 1964(c) by proving a violation of section 1962 and an injury resulting from the underlying racketeering acts; in a section 1962(c) action, the plaintiff need not prove that he was injured by the defendant's participation in the enterprise), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

In summary, dismissal of Smith's RICO claim is unwarranted. Her complaint identifies MCI's alleged wrongdoing with sufficient particularity and establishes a pattern of alleged racketeering activity. It need not identify an enterprise separate from MCI nor establish that her alleged injuries were caused by MCI's use of the racketeering proceeds.

II. *Count 2: The Common Law Fraud Claim Based on MCI's Acts Underlying the RICO Claim.*

MCI asserts that Smith's common law fraud claim based on MCI's acts underlying the RICO claim should be dismissed for lack of particularity in the complaint, *see*

Fed.R.Civ.P. 9(b), or for failure to state a claim on which relief may be granted. *See Id.* 12(b)(6). As stated above, we find Smith's complaint sufficiently particular as to MCI's actions and her asserted injuries. Further, although no specific allegations regarding other potential class members have been made, we are unwilling to dismiss the class action for lack of specificity given the early juncture in the proceedings and the lack of memoranda from the parties specifically addressing the propriety of the class action.

■■■ MCI contends that Smith has failed to plead the necessary elements of fraud, specifically reliance on an untrue statement resulting in injury, and that her complaint therefore must be dismissed under Federal Rule of Civil Procedure 12(b)(6). Smith responds that reliance on an untrue statement is not a necessary element of a fraud claim, or alternatively, that she has sufficiently pled reliance.

Kansas courts have not clearly delineated the parameters of common law fraud. Some statements indicate that fraud is a broad concept including many forms of deception, *see, e.g., Moore v. State Bank of Burden,* 240 Kan. 382, 389, 729 P.2d 1205, 1211 (1986) ("The broad outlines of fraud are said to include any cunning, deception, or artifice used, in violation of legal or equitable duty, to circumvent, cheat or deceive another. The forms it may assume and the means by which it may be practiced are as multifarious as human ingenuity can devise, and the courts consider it unwise to formulate an exact, definite, and all-conclusive definition of the action."), whereas other pronouncements appear to limit application of common law fraud to circumstances involving misrepresentation. *See, e.g., Tetuan v. A.H. Robins Co.,* 241 Kan. 441, 465–67, 738 P.2d 1210, 1228–30 (stating the broad definition of fraud but adding "that intent to deceive and reliance are elements of fraud in Kansas"). However, we find it unnecessary to determine the scope of fraud in Kansas, as even under the more restrictive definition requiring reliance, Smith has stated a claim.

Smith's complaint alleges that MCI represented to its sales force that they would receive certain commissions, when in fact MCI intended to and did fraudulently avoid paying the commissions. Thus misrepresentation is alleged. Additionally, Smith alleges that she and others worked for MCI, at least in part, because of the commissions which could be earned. Thus reliance is asserted, making dismissal for failure to state a claim unwarranted.

III.  *Count 4: Common Law Fraud Relating to MCI's Employment Contracts.*

■■■ MCI alleges that Smith's common law fraud claim relating to MCI's employment contracts should be dismissed for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). Smith alleges that MCI's employment contracts included a clause which disallowed employees terminated for any reason from collecting commissions already earned. She further asserts that the clause is contrary to Kansas law and fraudulent.

The Kansas Wage Payment Act provides that an employee who is discharged or quits is entitled to wages, including commissions, already earned. K.S.A. 44–315(a). Thus the provisions allegedly included in MCI's employment contracts were unenforceable. *See Weinzirl v. The Wells Group, Inc.,* 234 Kan. 1016, 677 P.2d 1004 (1984). However, we are unwilling to allow Smith to proceed with her fraud claim based on the clauses. Mere inclusion of an unenforceable provision in a contract does not evince fraud, and Smith has failed to specify any fraudulent intent on the part of MCI. Rather, she has merely concluded that the provisions were included to "unlawfully, willfully, wantonly, [and] maliciously" deprive employees of their wages. These conclusory allegations will not prevent dismissal of Smith's fraud claim. *See Seattle–First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1011 (10th Cir.1986) (fraud must be pled with particularity).

IV.  *Counts 3 and 5: Breach of Contract.*

■■■ MCI asserts that this court lacks subject matter jurisdiction over Smith's

breach of contract claims asserted in Counts 3 and 5 of her complaint. These claims arise from the same nucleus of operative facts that gives rise to Smith's RICO claim and her fraud claim contained in Count 2, and all of the claims are such that they could reasonably be litigated in one proceeding. Thus the court has subject matter jurisdiction over the claims under the doctrine of pendent jurisdiction. *United ed Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed. 2d 218 (1966).

MCI further asserts that Smith has initiated an administrative proceeding with the Kansas Department of Human Resources to recover her commissions, and that she has failed to exhaust this avenue of possible relief. However, MCI has submitted no evidence to support its assertion, and we decline to dismiss Smith's claim based on this unsubstantiated allegation.

IT IS THEREFORE ORDERED that MCI's motion to dismiss is denied as to Counts 1, 2, 3, and 5 of Smith's first amended complaint.

IT IS FURTHER ORDERED that MCI's motion to dismiss is granted as to Count 4 of Smith's complaint.