**MIDWEST GRINDING CO., INC., an Illinois Corporation, Plaintiff,**

v.

**Joshua M. SPITZ, an individual, Aron Grunfeld, an individual, and U.S. Grinding & Fabricating, Inc., an Illinois Corporation, Defendants.**

**No. 86 C 6480.**

United States District Court, N.D. Illinois, E.D.

May 11, 1989.

Richard J. Jacobson, Weston W. Hanscom, Jill E. Evans, Keck Mahin & Cate, Chicago, Ill., for plaintiff.

William L. Kabaker, Epton, Mullin & Druth, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

Plaintiff, Midwest Grinding Company, Inc. ("Midwest"), alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and asserts common law claims for breach of fiduciary duty, tortious interference and for accounting. Defendants, Joshua M. Spitz, Aron Grunfeld and U.S. Grinding & Fabricating, Inc. ("U.S. Grinding"), have moved to dismiss Midwest's Second Amended Complaint (the "complaint") in its entirety, arguing that Midwest's allegations fail to state a RICO claim and that federal jurisdiction is lacking for the common law claims. For the reasons stated herein, the Court finds plaintiff's RICO allegations sufficient to state a claim against defendant Spitz as to section 1962(c) and against Spitz and U.S. Grinding as to section 1962(d). The Court retains jurisdiction over the pendent com-

mon law claims and dismisses the RICO allegations based on section 1962(a) and (b).

## II. FACTS AND PROCEDURAL BACKGROUND

In reviewing a motion to dismiss, the Court must construe all allegations as true and view them in the light most favorable to plaintiff. *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 733 (7th Cir.1986), *cert. denied.* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Hence the Court describes the facts as alleged by Midwest in its complaint.

Midwest is in the business of supplying metal grinding services. In July, 1984, Klein Tools, Inc. ("Klein Tools"), a Midwest customer, purchased two-thirds of the outstanding capital stock of Midwest. Spitz owned the other third. As president and a director of Midwest, Spitz was responsible for managing the company's day-to-day business operations. In November, 1984, he secretly became a twenty-five percent owner of Cardinal Metals, Inc. (Cardinal), a competitor and supplier of Midwest. Grunfeld also became a twenty-five percent owner of Cardinal at this time.

During 1985 and 1986, Spitz routinely undercharged Cardinal and overcharged Klein Tools for Midwest's services. In December 1985, Spitz and Grunfeld agreed to form U.S. Grinding, which would compete directly with Midwest. Spitz and Grunfeld participated in the incorporation process, purchased machinery and secured a factory lease for U.S. Grinding.

In February, 1986, Midwest began to experience a sharp decline in business. Spitz told Midwest that the decline was due to a depressed market for grinding services. In fact, it was due to Spitz' solicitation of Midwest's customers on behalf of U.S. Grinding. Between March and August, 1986, Spitz solicited the following former Midwest clients: Acme Tool & Specialties Company (17 invoices); Ultra Specialties (21 invoices); W.S. Holmes (35 invoices); Courtesy Mold & Tool Corporation (17 invoices); and Northwestern Tool & Die (2 invoices). U.S. Grinding used Midwest's truck to make deliveries. The number of employees at Midwest dropped from twenty-six to fourteen. Spitz fired three of the employees and then had them hired by U.S. Grinding. Other Midwest employees resigned their positions to be hired by U.S. Grinding.

In August 1986, Spitz resigned from Midwest and started working full time at U.S. Grinding. Spitz offered to sell his shares in Midwest to Klein Tools, without revealing his prior work on behalf of U.S. Grinding. Klein Tools refused to buy these shares. In their November, 1986 depositions in this case, both Spitz and Grunfeld denied that Spitz had been involved in U.S. Grinding prior to his resignation. In response to Midwest's requests to admit, defendants made similar denials.

Midwest's complaint asserts that defendants made certain material representations and omissions which constitute mail and wire fraud and which are included in RICO's definition of "racketeering activity." *See* 18 U.S.C. § 1961(1). Midwest claims that the defendants' fraudulent acts, viewed as a whole, constitute a "pattern of racketeering" for which defendants are liable under section 1962(a) through (d) of RICO. In addition, Midwest asserts common law claims based on breach of fiduciary duty, tortious interference and constructive trust and accounting.

Defendants' arguments, which will be elaborated below, are as follows:

(1) Midwest has failed to plead mail and wire fraud with particularity as required by Fed.R.Civ.P. 9(b);

(2) Midwest has failed to plead a pattern of racketeering activity as required for plaintiff's RICO claims based on section 1962(a)–(d);

(3) Midwest has failed to plead facts sufficient to establish any injury resulting from a violation of section 1962(a) and (b); and

(4) Midwest has failed to plead facts sufficient to establish a conspiracy pursuant to section 1962(d).

Upon the failure of the RICO claims, defendants argue that the pendent claims

arising under state law should be dismissed.

## III. DISCUSSION

### A. *Violation of RICO Section 1962(a) and (b)*

Section 1964(c) of RICO provides a civil damage remedy only to those persons injured "by reason of a violation of section 1962." In the instant case, Midwest alleges that defendants violated section 1962(a) and (b). Section 1962(a) prohibits "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, . . . in . . . the operation of, any enterprise. . . ." Section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise. . . ." Defendants argue that Midwest must allege that the investment back into Cardinal and U.S. and the acquisition or maintenance of control of those companies harmed Midwest in order to satisfy the "by reason of" language of section 1964. Specifically, defendants argue that the section 1962(a) claim is deficient because Midwest has failed to allege sufficiently that it suffered an injury from the defendants' use or investment of the money which defendants allegedly derived from a pattern of racketeering and that the section 1962(b) claim is deficient because Midwest has failed to allege that it suffered an injury from the defendants' acquisition or maintenance of an interest in or control of an enterprise.

In determining the scope of RICO, the Court must first look to the language of the statute. *Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). "If the statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'" *Russello*, 464 U.S. at 20, 104 S.Ct. at 299 quoting *U.S. v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Section 1962(a) does not state that it is unlawful to receive racketeering income. The statute prohibits a person who has received such income from using or investing it or acquiring in the proscribed manner. Similarly, section 1962(b) provides that it is unlawful to acquire or maintain an interest or control of an enterprise in the proscribed manner.

From the plain language of these provisions, a plaintiff seeking civil damages for a violation of section 1962(a) must plead facts tending to show that he was injured by the use or investment of racketeering income. Injury from the racketeering acts themselves is not sufficient because section 1962(a) does not prohibit those acts. Likewise, under section 1962(b), the plaintiff must plead facts tending to show that the acquisition or control of an interest injured the plaintiff.

A minority of courts have held that a RICO claim based on a violation of section 1962(a) is sufficient where the plaintiff alleges he sustained injury solely by reason of the underlying racketeering acts. *See, e.g., Mid-State Fertilizer Co. v. The Exchange National Bank of Chicago*, 693 F.Supp. 666, 671–72 (N.D.Ill.1988) (Hart, J.); *Avirgan v. Hull*, 691 F.Supp. 1357, 1362 (S.D.Fla.1988); *Continental Grain Co. v. Pullman Standard, Inc.*, 690 F.Supp. 628 (N.D.Ill.1988) (Leinenweber, J.); *In re National Mortgage Equity Corporation Pool Certificates Securities Litigation*, 682 F.Supp. 1073, 1081–82 (C.D.Cal. 1987); *Smith v. MCI Telecommunications Corp.*, 678 F.Supp. 823, 828–29 (D.Kan. 1987); *Louisiana Power & Light Co. v. United Gas Pipe Line Co.*, 642 F.Supp. 781, 805–07 (E.D.La.1986); *Haroco, Inc. v. American National Bank*, 647 F.Supp. 1026, 1032–33 (N.D.Ill.1986) (Decker, J.). The majority, however, have held that in order to state a claim for violation of section 1962(a), the plaintiff must allege injury suffered by reason of the use or investment of the funds derived from the racketeering activity. *See e.g., Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir.1989) (citing cases); *Palumbo v. I.M. Simon & Co.*, 701 F.Supp. 1407, 1409–10 (N.D.Ill.1988) (Bua, J.); *P.M.F. Services,*

*Inc. v. Grady,* 681 F.Supp. 549, 555 (N.D. Ill.1988) (Shadur, J.); *Heritage Insurance Co. v. First National Bank of Cicero,* 629 F.Supp. 1412, 1417 (N.D.Ill.1986) (Getzendanner, J.).

Some courts in the minority position rely on the Supreme Court's opinion in *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), which held that a plaintiff has standing to assert a section 1962(c) claim upon showing an injury from racketeering activity itself. *Id.* 473 U.S. at 496, 105 S.Ct. at 3286. *See National Mortgage Equity,* 682 F.Supp. at 1081–82; *Smith,* 678 F.Supp. at 828–29. However, this Court agrees with the majority position that *Sedima* does not justify the conclusion that injury from racketeering activity alone is enough to create standing under section 1962(a) or (b). *See Grider,* 868 F.2d at 1150. Section 1962(c) differs significantly from either section 1962(a) or (b) in that it specifically prohibits the conduct of an "enterprise's affairs through a pattern of racketeering activity," 18 U.S.C. § 1962(c), thus making unlawful the racketeering activity itself. *See Grider,* 868 F.2d at 1150.

Some courts, as a matter of policy, argue that a civil action for violation of section 1962(a) and (b) would be rendered almost meaningless by the majority view, particularly in light of the principle that RICO is generally interpreted broadly. *See, e.g., Smith,* 678 F.Supp. at 828. *See also Sedima,* 473 U.S. at 498, 105 S.Ct. at 3286 ("RICO is to be liberally construed to effectuate its remedial purposes"). The general principle that RICO is to be accorded a liberal interpretation cannot, however, justify expanding section 1962(a) beyond the limits of that subsection's own language. *See Grider,* 868 F.2d at 1150; *Schofield v. First Commodity Corp.,* 793 F.2d 28, 30 (1st Cir.1986); *Haroco v. American Nat'l. Bank & Trust Co.,* 747 F.2d 384, 400 (7th Cir.1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *P.M.F. Services,* 681 F.Supp. at 555. As Judge Shadur noted in *P.M.F. Services,* the civil liability provision of RICO was essentially "spot-welded" to a criminal statute. 681 F.Supp. at 555. The criminal sanctions of RICO, unlike the civil sanctions, do not require identification of a victim; the crimes are complete in themselves. In this context, the possibility that the addition of a civil remedy will not occasion many successful claims for violations of section 1962(a) or (b), and thus "not produce a totally seamless result," is not surprising. *Id.* at 555–56. The nature of the civil claim depends on the nature of the violation which is defined by section 1964(c), and the specific subsection of section 1962 makes the violation not the conduct of racketeering activity alone, but rather the use of that racketeering activity in the particular way the subsection declares unlawful. *Id.* at 556.

■ The Court thus agrees with the majority position. In order to allege injury "by reason of" section 1962(a), a RICO plaintiff must demonstrate that he was injured "by reason of" the use or investment of the income derived from racketeering. Similarly, in order to allege injury "by reason of" section 1962(b), a RICO plaintiff must demonstrate that the defendants' acquisition or control of an interstate enterprise injured the plaintiff. *See Shearson Lehman v. American Express, Inc.,* 687 F.Supp. 177, 181 (E.D.Pa.1988); *Airlines Reporting Corp. v. Barry,* 666 F.Supp. 1311, 1314–15 (D.Minn.1987), *aff'd on other grounds,* 825 F.2d 1220 (8th Cir.1987).

In the present case, Midwest's RICO claim does not meet the proximate cause requirements outlined above. Essentially, Midwest claims that it was injured by defendants' acts of racketeering. The complaint contains conclusory allegations which parrot each of the four parts of section 1962. With respect to section 1962(a), for example, the complaint alleges that "Spitz, Grunfeld and U.S. Grinding have received income derived from a pattern of racketeering activity and have used or invested part of such income, or the proceeds of such income, in acquisition of an interest in, and the establishment or operation of, Cardinal and U.S. Grinding, enterprises which are engaged in, or the activities of which affect, interstate or foreign commerce." (Second Amended Complaint, ¶ 42.) Paragraph 45 of the com-

plaint contains a broad injury allegation which encompasses each of the four RICO allegations: "Pursuant to 18 U.S.C. § 1964(c), Midwest has been injured in its business and property by reason of defendants' violations of § 1962...." The complaint does not include a specific allegation that Midwest has been injured by defendants' use or investment of income derived from mail or wire fraud or by defendants' acquisition or control of U.S. Grinding. Although such allegations could perhaps have been made, they are not contained in this version of the complaint, and the Court is not willing to subject defendants to yet another opportunity for Midwest to revise its claims.

The proximate cause of Midwest's injury as alleged in the complaint is defendants' alleged acts of racketeering themselves. Therefore, Midwest's RICO claims brought under section 1962(a) and (b) do not satisfy the requirement that the injury be "by reason of" the use or investment, or the acquisition or control of an interest. Accordingly, Midwest's RICO claims based on section 1962(a) and (b) are dismissed.

B. *Mail and Wire Fraud*

The next issue concerns Spitz and Grunfeld's alleged violation of section 1962(c). In paragraph 44 of the Amended Complaint, Midwest alleges that the defendants committed the following acts of mail or wire fraud:

a) Mailings in 1985 and 1986 of understated invoices for services provided to Cardinal and Midwest;

b) Mailings during January, 1986 in connection with the incorporation of U.S. Grinding;

c) Mailings during 1985 and 1986 in connection with efforts to obtain financing and goods with U.S. Grinding;

d) Interstate telephone calls during 1985 and 1986 for business purposes;

e) Mailings of invoices during 1986 to customers wrongfully diverted from Midwest to U.S. Grinding; and

f) Mailings in August, 1986 by Spitz to Klein Tools offering to sell his shares in Midwest.

Defendants argue that Midwest has failed to set forth wire and mail fraud[1] allegations sufficient to pass muster under Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud to specify "with particularity" the circumstances misrepresentations. *See Haroco, Inc. v. American National Bank,* 747 F.2d at 405 (Rule 9(b) applies to fraud allegations in a civil RICO complaint). To satisfy Rule 9(b), Midwest must describe the time, place, particular contents of the false representations, the identity of the party making the misrepresentations and the consequences of the alleged fraud. *See UNR Industries, Inc. v. Continental Ins. Co.,* 623 F.Supp. 1319, 1328–29 (N.D.Ill.1985) (Getzendanner, J.); *Beck v. Cantor, Fitzgerald & Co., Inc.,* 621 F.Supp. 1547, 1551 (N.D.Ill.1985) (Rovner, J.). However, Rule 9(b) requires no more than that the complaint generally outline a fraudulent scheme and reasonably notify each of the defendants of their respective roles. *See Haroco,* 747 F.2d at 405.

Midwest identifies Spitz as the person who made all the misrepresentations surrounding the undercharging of Cardinal and the diversion of Midwest customers to U.S. Grinding.[2] Midwest also identifies sufficiently the parties to whom the mis-

---

1. The elements of mail fraud are the devising of a scheme to defraud and the use of the mails for the purpose of executing the scheme. 18 U.S.C. § 1341. *See U.S. v. Gimbel,* 830 F.2d 621, 626 (7th Cir.1987); *Ray v. Karris,* 780 F.2d 636 (7th Cir.1985); *Tomera v. Galt,* 511 F.2d 504, 508 (7th Cir.1975). Similarly, the elements of wire fraud are the devising of a scheme to defraud and interstate wire transmission for the purpose of executing the scheme. 18 U.S.C. § 1343.

2. Midwest alleges that Spitz misrepresented to the Midwest directors that business was down due to a depressed grinding market, when in fact Spitz was soliciting Midwest's customers on behalf of U.S. Grinding. Spitz also misrepresented to Midwest that several Midwest employees were terminated for poor work performance, when in fact he arranged for their hiring by U.S. Grinding. Spitz further omitted the nature of his involvment in U.S. Grinding in a letter offering his share in Midwest to Klein Tools.

representations were made (Midwest, Klein Tools and the former Midwest clients) and the contents of the misrepresentations (undercharging Cardinal, overcharging Klein Tools, and charging former Midwest clients for services rendered by U.S. Grinding). However, Midwest has failed to identify sufficiently the dates of the mailings made by Spitz with relation to the scheme to undercharge Cardinal and overcharge Klein Tools, in contrast to Midwest's identification in great detail of the dates of the scheme to divert Midwest customers to U.S. Grinding.[3] Midwest states merely that the misrepresentations took place between August, 1984 and August, 1986. Midwest's failure to identify the dates with specificity is perplexing in light of the fact that Midwest had engaged in over two years of discovery when it filed this edition of the complaint. Therefore the only mail fraud violations against Spitz that are pled sufficiently relate to the scheme to defraud Midwest by diverting Midwest's customers to U.S. Grinding, and not the scheme to undercharge Cardinal.

The mail fraud allegations against Grunfeld also fail for lack of specificity pursuant to Rule 9(b). Midwest has failed to identify any misrepresentation that Grunfeld made or in which he participated. *See UNR Industries,* 623 F.Supp. at 1329. In paragraphs 9 and 16 of the complaint, Midwest fails to identify whether Spitz, Grunfeld or their attorney mailed the documents relating to the incorporation of U.S. Grinding. Similarly, in paragraph 14, Midwest alleges that "defendants" used the mails to purchase machinery for U.S. Grinding without alleging which defendant used the mails. These allegations are insufficient to state a claim for violation of the mail fraud statute by Grunfeld. *See H.G. Gallimore v. Abdula,* 652 F.Supp. 437, 441 (N.D.Ill. 1987); *Adair v. Hunt Intern. Resources Corp.,* 526 F.Supp. 736, 744 (N.D.Ill.1981).

Defendants further argue that Midwest has failed to allege wire fraud with suffi-cient particularity. Under the federal wire fraud statute only interstate communications can constitute wire fraud. 18 U.S.C. § 1343. *See H.G. Gallimore,* 652 F.Supp. at 449. Paragraph 44 of Midwest's Second Amended Complaint mentions interstate phone calls and states merely that "various interstate telephone calls (were made) during 1985 and 1986 for business purposes." This bald assertion is insufficient to satisfy the requirements of Rule 9(b), because Midwest has not alleged with specificity the time, place, contents, or identity of the party making the misrepresentations. *See Haroco* 747 F.2d at 405; *Beck,* 621 F.Supp. at 1551.

Midwest has sufficiently alleged that Spitz, but not Grunfeld, violated the mail fraud statute. Midwest has not sufficiently pled a violation of the wire fraud statute with respect to either defendant. In light of these holdings, Midwest has sufficiently alleged the requisite mail fraud violations of section 1962(c) with regard to Spitz, but not Grunfeld. The section 1962(c) count against Grunfeld is therefore dismissed.

## C. *Section 1962(d) Conspiracy Claim*

Defendants argue that the conspiracy claim under section 1962(d) should be dismissed for failure to meet the standard for pleading a conspiracy. Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Midwest has sufficiently pled a conspiracy between Spitz and Midwest, but not Grunfeld.

A complaint which merely implies that a defendant is responsible for someone else's fraudulent acts is insufficient to satisfy section 1962(d). *Frymire v. Peat, Marwick, Mitchell & Co.,* 657 F.Supp. 889, 895 (N.D.Ill.1987). A plaintiff alleging conspiracy must identify the nature of the conspiracy and the defendant's role in it with some particularity. *Id.* at 896. Most

---

**3.** In paragraphs 31 through 35 of the complaint, Midwest identifies over ninety individual invoices sent by U.S. Grinding to Midwest's former clients in furtherance of the scheme. Many of these invoices contained Spitz's signature. In addition, Midwest has adequately alleged in paragraph 39 of the complaint that on August 14, 1986, Spitz mailed to Klein Tools an offer to sell his shares in Midwest in furtherance of the scheme.

importantly, since conspiracy rests on agreement, the plaintiff must allege with some particularity facts sufficient to show an agreement between the parties to inflict the alleged wrong. *Id. See also United States v. Neapolitan,* 791 F.2d 489, 498 (7th Cir.), *cert. denied,* 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986) (defendants need not themselves perform the predicate acts necessary to support a pattern of racketeering activity, but they must agree to someone doing such acts on behalf of the conspiracy). Further, the plaintiff must allege that the defendants agreed to one of the uses or effects of that pattern of racketeering activity which the statute expressly prohibits, such as conducting the affairs of an enterprise through a pattern of racketeering activity, 18 U.S.C. § 1962(c). *Id.* at 497, 499.

▪ Midwest adequately alleges that U.S. Grinding, by its actions, agreed with Spitz to violate RICO. Midwest alleges that U.S. Grinding made fraudulent mailings to Midwest's former customers, and that it also used Midwest's truck to provide its services to former Midwest customers. These allegations are sufficient under section 1962(d) to show an agreement to violate section 1962(c).

▪ The same cannot be said for the allegations against Grunfeld. In a conclusory fashion Midwest states that Grunfeld conspired to violate the provisions of section 1962(c). The complaint states that Grunfeld aided in the incorporation process, purchased machinery and secured a factory lease for U.S. Grinding. These facts are insufficient to infer that Grunfeld agreed with Spitz to engage in the predicate acts of mail and wire fraud.

Midwest's motion to dismiss the section 1962(d) claim is granted with regard to Grunfeld and denied with regard to Spitz and U.S. Grinding.

### D. *Pattern of Racketeering Activity*

The Court must now address the RICO allegations under section 1962(c) against Spitz. Defendants move to dismiss the RICO count on the ground that the allegations do not establish a pattern of racketeering activity. Defendants argue that at best Midwest has alleged a single scheme and a single victim.

Midwest alleges that defendants engaged in three schemes to defraud Midwest and that these schemes create a pattern of racketeering activity. In the first scheme, Spitz and Grunfeld used Spitz's position at Midwest to undercharge Cardinal and overcharge Klein Tools for grinding services. This scheme has been dismissed for failure to sufficiently plead a violation of the mail fraud statute. *See supra* at Part III.B. In the second scheme, Spitz, Grunfeld and U.S. Grinding diverted business, employees and property from Midwest to U.S. Grinding. The third scheme involved a conspiracy by defendants to commit perjury during this lawsuit. For the reasons stated below, Midwest has sufficiently alleged the second scheme, but not the third scheme to defraud. However, the second scheme alone is sufficient to establish a pattern of racketeering activity.

To satisfy the "pattern" requirement, Midwest must allege at least two predicate acts of racketeering activity. 18 U.S.C. § 1961(5). Furthermore, the alleged racketeering activity must demonstrate "continuity and relationship" in order to constitute a pattern. *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. To satisfy the continuity element, "the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, i.e., transactions somewhat separated in time and place." *Medical Emergency Service Associates v. Foulke,* 844 F.2d 391, 395 (7th Cir.1988) (citations omitted). Many factors are relevant to the determination of whether a pattern exists, including "(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries." *Jones v. Lampe,* 845 F.2d 755, 757 (7th Cir.1988). *See also United States v. Horak,* 833 F.2d 1235, 1240 (7th Cir.1987).

The Seventh Circuit has continued to analyze pattern of racketeering activity issues in fact-specific terms based on these factors. *See Brandt v. Schal Associates, Inc.*, 854 F.2d 948, 952 (7th Cir.1988); *SK Hand Tool Corp v. Dresser Industries, Inc.*, 852 F.2d 936, 940 (7th Cir.1988); *Medical Emergency Services*, 844 F.2d at 395. Numerous Seventh Circuit decisions have held that a pattern of racketeering does not exist where multiple fraudulent acts are committed in furtherance of a single episode of fraud that involves one victim and relates to one basic transaction. *See Brandt*, 854 F.2d at 952–54; *SK Hand Tool*, 852 F.2d at 940; *Medical Emergency Service*, 844 F.2d at 396–98; *Tellis v. U.S. Fidelity & Guaranty Co.*, 826 F.2d 477, 479 (7th Cir.1987); *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 818 (7th Cir.1987); *Marks v. Pannell Kerr Foster*, 811 F.2d 1108, 1112 (7th Cir.1987); *Elliott v. Chicago Motor Club Ins.*, 809 F.2d 347, 350 (7th Cir.1986).

■ The third alleged scheme to defraud concerns denials made in this case by the defendants in response to Midwest's interrogatories and by Spitz and Grunfeld in their depositions. These denials cannot constitute a scheme for purposes of the RICO statute. In *Jones*, a bank had allegedly engaged in a single fraudulent loan transaction. The Seventh Circuit rejected the characterization of the bank's subsequent "cover-up" activities as a separate scheme. *Id.* at 759. The court stated that to do so would turn every transaction "into a 'multiple scheme' if the defendant denies wrongdoing." *Id. See also SK Hand Tool*, 852 F.2d at 941 n. 8. The same reasoning applies to the defendants' denials made during the course of this lawsuit. Hence, Midwest has failed to allege a separate scheme to defraud based on a cover-up of its prior activities.

The only remaining scheme involves the diversion of business, employees and property from Midwest to U.S. Grinding. The factual circumstances alleged in Midwest's complaint with relation to this scheme are not properly characterized as only "one episode of fraud," and the multiple racke-teering acts allegedly committed by defendants do not relate to only "one basic transaction." Instead, Midwest's allegations set forth a series of transactions, each of which amounted to a single episode of fraud.

The Seventh Circuit addressed a similar scheme involving multiple episodes of fraud in *Liquid Air Corporation v. Rogers*, 834 F.2d 1297 (7th Cir.1987). In *Liquid Air*, defendants defrauded plaintiff Liquid Air Corporation by bribing one of Liquid Air's employees. Defendants caused the employee to prepare false shipping orders and invoices on nineteen separate occasions so that it appeared defendants had returned gas cylinders which defendants had been leasing from Liquid Air. Defendants improperly retained the cylinders. The *Liquid Air* court held that on each occasion when the employee prepared a false invoice, Liquid Air sustained a distinct injury. *Id.* at 1304–05. The court found that even though defendants effectuated a single fraudulent scheme on a single victim, they had engaged in a pattern of racketeering. The court stated that the repeated infliction of economic injury on a single victim of a single scheme is sufficient to establish a pattern of racketeering activity. *Id.* at 1305.

■ This case is even stronger than *Liquid Air* because of the variety and quantity of predicate acts. These acts included the diversion of numerous Midwest business clients in nearly one hundred separate transactions, the diversion of a number of Midwest employees to U.S. Grinding, and using Midwest's truck for U.S. Grinding deliveries. Moreover, Midwest alleges that defendants committed fraudulent acts during each of the separate grinding transactions. As a result of each transaction, Midwest sustained a loss of business. Each lost transaction therefore caused Midwest a distinct injury.

The Court finds that the alleged fraudulent acts of the defendants pass the "continuity plus relationship" test. The acts were sufficiently separate in time and place to meet the "continuity" prong of the test. The acts related to separate transactions, caused numerous distinct injuries, and occurred over a seven-month span. At the

same time, the acts are sufficiently related to meet the "relationship" prong of the test. The acts were inflicted upon the same victim, Midwest, involved the same type of fraud, and were committed somewhat closely in time. Therefore, the Court concludes that Midwest's allegations are sufficient to allege a pattern of racketeering activity. Accordingly, the Court denies defendants' motion to dismiss Midwest's section 1962(c) RICO claim as it applies to Spitz.

## IV. CONCLUSION

█ Defendants' motion to dismiss Count I is granted with regard to section 1962(a) and (b) for failure to allege injury caused by the claimed violations. The motion to dismiss the section 1962(c) aspect of Count I is granted with regard to Grunfeld for failure to plead fraud with particularity and denied with regard to Spitz. The motion to dismiss the section 1962(d) conspiracy claim of Count I is granted with regard to Grunfeld and denied with regard to Spitz and U.S. Grinding. Because parts of the RICO claim survive, the motion to dismiss the pendent state law claims is denied as to Counts II, III and IV.[4]

---

**4.** In addition to filing two amended complaints, Midwest supplemented its first amended complaint. Midwest is denied leave to file a third amended complaint. When a plaintiff is put on notice of the deficiencies of the complaint and fails to correct them in the amended complaint, dismissal with prejudice is proper. *See Hayduk v. Lanna,* 775 F.2d 441, 445 (1st Cir.1985); *Denny v. Barber,* 576 F.2d 465, 471 (2d Cir.1978). Midwest had notice of the deficiencies of its complaint as outlined in defendants' briefs prior to the second amendment.