John Z. DeLOREAN, and Logan Manufacturing Company, a Delaware Corporation, Plaintiffs,

v.

CORK GULLY, A United Kingdom Entity, Chartered Accountants; Sir Kenneth Cork; PFM Shewell; Robert Weiss; Christopher Hughes; Sheldon Toll; Honigman Miller Schwartz & Cohn, a Michigan Professional Partnership; Malcolm Schade; Yale Levin; and Price Waterhouse & Company, a New York Corporation, Jointly and Severally, Defendants.

No. 88–CV–74835–DT.

United States District Court, E.D. Michigan, S.D.

Aug. 14, 1990.

Mayer Morganroth, Southfield, Mich., for John DeLorean and Logan Mfg. Co.

Merle R. Jenkins, Jr., Jenkins, Reebel & Zameck, Southfield, Mich., for Cork Gully, Sir Kenneth Cork, PMF Shewell and Christopher Hughes.

Eugene Driker, Sharon Woods, and Morley Witus of Barris, Sott, Denn & Driker, Detroit, Mich., for Robert Weiss, Sheldon Toll and Honigman, Miller.

A. William Rolf, Tucker & Rolf, Southfield, Mich. and Howard W. Goldstein, Mudge, Rose, Guthrie, Alexander & Ferdon, New York City, for Malcolm Shade.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### INTRODUCTION

This action was commenced by the filing of a complaint in the United States District Court for the Southern District of California on or about April 5, 1988. Thereafter, defendants moved to dismiss or for transfer of this action on the ground of improper venue. Chief Judge Gordon Thompson, Jr. of the Southern District of California, granted defendants' motion to transfer and on December 6, 1988, ordered the case transferred to the Eastern District of Michigan pursuant to 28 U.S.C. § 1406.

Subsequent to the transfer, defendants filed various dispositive motions. Plaintiffs moved to amend their complaint, which was permitted. Defendants then filed supplements to their briefs in support of the dispositive motions. Rather than ruling on defendants' motions, the Court decided it was in the best interest of justice to first allow full discovery. Discovery is now closed, defendants have renewed their dispositive motions and the case is ripe for decision.

Plaintiffs' amended complaint alleges violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, malicious prosecution, intentional infliction of emotional distress and tortious interference with business relationships. After reviewing the amended complaint, the Court is convinced that this action is clearly a collateral attack on the bankruptcy proceedings which involved the DeLorean Motor Company.[1] For reasons more fully explained below, it is the opinion of the Court that the amended complaint

---

1. "Even though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment." *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358, 360 (5th Cir.1972) (citing *Mitchell v. Village Creek Drainage District*, 158 F.2d 475, 478 (8th Cir.1946)). Plaintiffs' amended complaint repeatedly attacks numerous court orders that were upheld on appeal, either to the district court or to the court of appeals.

Moreover, this case presents issues plaintiffs previously have lost and which cannot be relitigated. Under general principles of collateral estoppel, "once an issue is actually litigated and necessarily determined, that determination is conclusive in subsequent suits based on a different cause of action but involving a party or privy to the prior litigation." *United States v. ITT Rayonier, Inc.* 627 F.2d 996, 1000 (9th Cir. 1980) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979)). *See also Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Overseas Motors, Inc. v. Import Motors Limited, Inc.*, 375 F.Supp. 499, 510–11 (E.D.Mich.1974). The purpose of collateral estoppel is to conserve judicial resources, protect litigants from the expense and vexation of multiple lawsuits and foster certainty and reliance in legal actions. *See Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980); *Montana*, 440 U.S. at 153–54, 99 S.Ct. at 973–74; *James v. Gerber Products Co.*, 587 F.2d 324, 327–28 (6th Cir.1978). *See also Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466–67 n. 6, 102 S.Ct. 1883, 1889–90 n.

does not form the basis of a cause of action under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, and that plaintiffs' pendant state law claims are without merit.

As indicated, various dispositive motions have been filed by defendants. A summary of these motions is as follows: Defendant Malcolm R. Schade (Schade) has moved for summary judgment pursuant to Fed.R.Civ.P. 56. Defendants Honigman Miller Schwartz and Cohn (HMSC), Robert B. Weiss (Weiss) and Sheldon S. Toll (Toll) have moved for judgment on the pleadings and for summary judgment pursuant to Fed.R.Civ.P. 12(c) and 56 respectively. Defendant Paul F.M. Shewell (Schewell) has moved for summary judgment pursuant to Fed.R.Civ.P. 56. Finally, defendants Cork Gully, Sir Kenneth Russell Cork (Cork) and Christopher J. Hughes (Hughes) (the U.K. defendants), have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(2), (5) and (6) and for summary judgment pursuant to Fed.R.Civ.P. 56. The U.K. defendants advise they will waive their 12(b)(2) and (5) objections to service of process and personal jurisdiction if this Court decides to dismiss the complaint with prejudice or grant summary judgment.[2] Former defendants Price Waterhouse and Yale Levin had moved to dismiss pursuant to Fed.R. Civ.P. 12(b)(1) and (6). On January 31, 1990, however, these defendants and plaintiffs reached a resolution and an appropriate order of dismissal was entered. Price Waterhouse and Levin are no longer parties to this suit. Voluminous exhibits, deposition transcripts, affidavits and other extraneous matter have been submitted in support of the various dispositive motions. Accordingly, the Court will treat motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and motions for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) as motions for summary judgment pursuant to Fed.R. Civ.P. 56.

## I. SUMMARY JUDGMENT

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Blakeman v. Mead Containers*, 779 F.2d 1146 (6th Cir.1986); Fed.R.Civ.P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *United States v. Diebold*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Cook v. Providence Hosp.*, 820 F.2d 176, 179 (6th Cir.1987); *Smith v. Hudson*, 600 F.2d 60 (6th Cir.1979), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). In deciding a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. Although summary judgment is disfavored, this motion may be granted when the trial would merely result in delay and unneeded expense. *Poller v. Columbia Broadcasting Systems, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *A.I. Root Co. v. Computer/Dynamics, Ind.*, 806 F.2d 673, 675 (6th Cir.1986).

---

6, 72 L.Ed.2d 262 (1982) ("[T]his Court has consistently emphasized the importance of the related doctrines of res judicata and collateral estoppel in fulfilling the purpose for which civil courts had been established, the conclusive resolution of disputes within their jurisdiction.").

**2.** Defendant Schade has joined in the motions filed by HMSC, Weiss and Toll and Shewell. The U.K. defendants have joined in motions filed by HMSC, Weiss and Toll and Schade.

Where the nonmoving party has failed to present evidence on an essential element of their case, they have failed to meet their burden and all other factual disputes are irrelevant; thus, summary judgment is appropriate. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (Footnote omitted)).

## II. PARTIES

This case is most easily understood with an explanation of the parties and what brought them together. The DeLorean Motor Company (DMC) bankruptcy proceeding began on October 25, 1982, when DMC voluntarily filed a Chapter 11 reorganization case (The "Chapter 11 Case") in the United States Bankruptcy Court for the Eastern District of Michigan.[3] The Chapter 11 case was commenced six days after DMC's Chairman and Chief Executive Officer, John Z. DeLorean ("JZD"), had been arrested in Los Angeles on federal narcotics charges. By order of then United States Bankruptcy Judge George E. Woods, dated November 15, 1982, five unsecured creditors of DMC were appointed as members of the Official Chapter 11 Unsecured Creditors' Committee of DMC (the "Chapter 11 Committee"). At that time, Defendant Schade was elected Chairman of the Chapter 11 Committee as the representative of the Industrial Development Board of the Department of Economic Development (DED), which is a department of the British Government and an unsecured creditor of DMC (Affidavit of Malcolm R. Schade at pg. 3).

Subsequently, on November 18, 1982, defendant HMSC was appointed counsel to the Chapter 11 Committee and was specifically authorized to assist the Chapter 11 Committee in carrying out its duties. Defendants Toll and Weiss are partners of the law firm HMSC. At the request of the Chapter 11 Committee, former defendant Price Waterhouse was appointed as Examiner and the former Price Waterhouse partner Levin also a former defendant, was appointed liaison to the Court and parties in interest, by an order of Bankruptcy Judge Woods dated February 23, 1983. (Schade affidavit at 4).

Defendant Cork Gully is Coopers & Lybrand–UK, a United Kingdom partnership of professional accountants which conducts an insolvency practice in the United Kingdom. Defendants Sir Kenneth Cork and Christopher Hughes are chartered (certified public) accountants who are residents of the United Kingdom. Hughes is, and Cork was until his retirement from Cork Gully in 1983, a member of the Cork Gully firm. Defendant Paul F.M. Shewell is a retired chartered accountant and a citizen of the United Kingdom. Schewell was a member of Cork Gully until in or about February 1985, when he moved to Hong Kong. Defendants Cork, Shewell and Hughes are former or current Joint Receivers of DSQ Property Company Limited, formerly known as DeLorean Motor Cars Limited (DMCL). DMCL was a Northern Ireland corporation that was a manufacturing subsidiary of DMC. Financial difficulties caused DMCL to default in the repayment of certain secured indebtedness, and defendants Cork and Shewell were appointed Joint Receivers of DMCL pursuant to an indenture (loan and security agreement) between DMCL and the secured creditor. On or about February 25, 1985, Schewell re-

---

**3.** Plaintiffs refer in their amended complaint to numerous actions instituted by the Official Chapter 11 Unsecured Creditors' Committee of DMC or by the Chapter 7 Trustee of DMC and to the numerous court orders issued in the course of prosecuting those actions. The Court will take judicial notice of the pleadings and court records in those actions. *See, e.g., Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 157, 89 S.Ct. 935, 942, 22 L.Ed.2d 162 (1969) (court

may take judicial notice of its own record); *Harrington v. Vandalia–Butler Bd. of Education,* 649 F.2d 434, 441 (6th Cir.1981); *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir.1980) (quoting *Granader v. Public Bank,* 417 F.2d 75, 82–83 (6th Cir.1969), *cert. denied,* 397 U.S. 1065, 90 S.Ct. 1503, 25 L.Ed.2d 686 (1970)) ("Federal courts may take judicial notice of proceedings in other courts of record."). *See also* Fed.R.Evid. 201.

signed as a Joint Receiver of DMCL and Hughes was appointed to replace him in that capacity.

After DMC filed the Chapter 11 reorganization case, the Joint Receivers of DMCL filed a proof of claim against the estate of DMC as an unsecured creditor, based upon claims of DMCL which were subject to the DMCL indenture. Cork and Shewell were thereafter jointly appointed by the United States Bankruptcy Court for this district as a member of the Official Chapter 11 Unsecured Creditors' Committee of DMC.

On or about December 23, 1983, DMC voluntarily converted the Chapter 11 case to a Chapter 7 liquidation case, and the Chapter 11 case ceased to exist. Thereafter, the same unsecured creditors and their representatives who had served on the Chapter 11 Committee, including the Joint Receivers of DMCL, were elected and appointed by the Bankruptcy Court as members of the Official Chapter 7 Unsecured Creditors' Committee of DMC (Chapter 7 Committee).

## III. APPLICABLE LAW

■ As indicated above, plaintiffs originally filed this lawsuit in the United States District Court, Southern District of California. The case was transferred pursuant to 28 U.S.C. § 1406(a). As such, the law of Michigan should apply to the state law claim, contrary to plaintiffs' assertion that the law of California should apply. *See Martin v. Stokes,* 623 F.2d 469 (6th Cir. 1980), wherein the court stated: "following a transfer under 1406(a), the transferee

district court should apply its own state law rather than the state law of the transferor district court." *Id.* at 472 (citations omitted). The federal claim, under RICO will be governed by the law of the Sixth Circuit.[4]

## IV. OPINION

### A. MALICIOUS PROSECUTION

Plaintiffs' complaint of malicious prosecution is based solely on the case captioned *David W. Allard, Jr., Trustee v. John Z. DeLorean, Howard L. Weitzman, et al,* No. 84–1038–JLI(CM) (S.D.Cal.) (Pauma Valley case). The Pauma Valley case was instituted by the Trustee in the Southern District of California on April 13, 1984. JZD and Howard L. Weitzman were named as defendants. The adversary proceeding concerned the alleged fraudulent conveyance of JZD's Pauma Valley ranch to Weitzman. After a bench trial, Judge Irving issued Findings of Fact and Conclusions of Law in favor Of JZD and Weitzman. Pursuant to an overall settlement agreement in the DMC bankruptcy proceeding, however, the judgment in favor of JZD was vacated by Judge Irving on December 4, 1987, and the parties stipulated to a dismissal with prejudice. (Affidavit of Malcolm Schade, paragraphs 63–64).

To properly plead a case for malicious prosecution, Plaintiffs must allege "(1) prior proceeding terminated in favor of present plaintiff, (2) absence of probable cause for those proceedings, (3) a purpose for bringing the prior proceeding other

---

4. Even though there has been a judicial determination that venue is proper in this Court and therefore the law of Michigan should apply, plaintiffs argue that the malicious prosecution allegation should be decided using the law of the state of California because that is where the tort allegedly occurred. Accepting plaintiffs' assertion as true, the Court believes it is proper to use the law of the state of Michigan in deciding the malicious prosecution claim. "[I]t is well settled that as to matters governed by state law under *Erie,* a federal court must follow the choice of law rules of the state in which it is sitting to determine which state's law to apply." 19 Wright Miller and Cooper, Federal Practice and Procedure, § 4506 at 73. In tort actions, Michigan courts traditionally applied the doc-

trine of *lex loci delicti* (the law of the place where the tort occurred). However, the Michigan Supreme Court has rejected this doctrine as the absolute rule. *Sexton v. Rider Truck Rental Inc.,* 413 Mich. 406, 320 N.W.2d 843 (1982) (plurality opinion); *Olmstead v. Anderson,* 428 Mich. 1, 400 N.W.2d 292 (1987). Alternatively, Michigan courts determine whether there exists any rational reason to displace Michigan law. If no such reason exists, then Michigan law is applied. In the case at bar, there has not been a showing that the interests of another state override the presumption that the law of Michigan should control. Therefore, the Court will apply the law of the state of Michigan on the state law claims.

than that of securing the proper adjudication of the claim, and (4) injury, including special injury. *Parisi v. Michigan Township's Ass'n.*, 123 Mich.App. 512, 332 N.W.2d 587, 589 (1983) (citing *Friedman v. Dozorc*, 412 Mich. 1, 48, 312 N.W.2d 585 (1985)).

■ For purposes of malicious prosecution, a stipulated dismissal with prejudice does not amount to a termination in the claimant's favor. *See, e.g., Kauffman v. Shefman*, 169 Mich.App. 829, 426 N.W. 2nd 819, 825 (1988). Furthermore, termination of an action by virtue of a settlement or compromise of the claims does not amount to a termination in favor of the plaintiff. *See, e.g., Brand v. Hinchman*, 68 Mich. 590, 36 N.W. 664 (1888), quoted in *Kauffman*, 426 N.W. 2nd at 825. Finally, the judgment in favor of Mr. Weitzman does not provide plaintiffs with any basis for their malicious prosecution claim. As plaintiffs cannot establish even the first element of the four-part test for determining malicious prosecution, it is not necessary to address the other three elements. Therefore, defendants' motion for summary judgment as to Count 1 of plaintiffs' complaint, malicious prosecution, is GRANTED.

## B. RICO CLAIM

In the recent case of *H.J. Inc. v. Northwestern Bell Telephone Company*, —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), the court summarized the Racketeer Influenced and Corrupt Organizations Act (RICO), Pub.L. 91–452, Title IX, 84 Stat. 941, as amended, 18 U.S.C. §§ 1961–1968 (1982 ed. and Supp. V). The court explained:

> [RICO] imposes criminal and civil liability upon those who engage in certain "prohibited activities." Each prohibited activity is defined in 18 U.S.C. § 1962 to include, as one necessary element, proof either of "a pattern of racketeering activity" or of "collection of an unlawful debt." "Racketeering activity" is defined in RICO to mean "any act or threat involving" specified state-law crimes, any "act" indictable under various specified

federal statutes, and certain federal "offenses," 18 U.S.C. § 1961(1) (1982 ed., Supp. V); but of the term "pattern" the statute says only that it "requires at least two acts of racketeering activity" within a 10–year period, § 1961(5).

*Id.* 109 S.Ct. at 2897.

> RICO renders criminally and civilly liable "any person" who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity," § 1962(b); who being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," § 1962(c); or finally, who conspires to violate the first three subsections of § 1962, § 1962(d).

*Id.*

As indicated above, all defendants in the case at bar are or were court-appointed participants in the DMC bankruptcy proceedings. Plaintiffs' RICO claim is based on alleged acts of the defendants, engaged in during the course of the numerous court proceedings. Plaintiffs allege defendants, through the use of the mails and wires, engaged in a scheme to defraud plaintiffs and others of their properties and assets to the benefit of defendants and to benefit other members of the enterprise. Plaintiffs allege the defendants committed unlawful conduct that violated 18 U.S.C. § 1962(a), (b), (c) and (d). Section 1962(a-c) require that Plaintiffs plead and prove: (1) that a defendant "person," (2) through the commission of predicate criminal acts which constitute a "pattern" of "racketeering activity", (3) directly or indirectly invests in, or maintains an interest in, or participates in, (4) an "enterprise", the activities of which, (5) affect interstate or foreign commerce. *Cincinnati Gas and Electric v. General Electric Co.*, 656 F.Supp. 49, 75 (S.D.Ohio 1986).

Only the criminal acts enumerated at 18 U.S.C. § 1961(1) may constitute "racketeer-

ing activity" under RICO. As indicated above, "[t]he predicate acts of racketeering activity enumerated in the statute are quite broad; they include 'nine state law felonies and the violation of more than 25 federal statutes.'" *In re Gas Reclamation, Inc. Securities Litigation*, 659 F.Supp. 493 (S.D.N.Y.1987), quoting *Bankers Trust Company v. Feldesman*, 648 F.Supp. 17, 34 (S.D.N.Y.1986). "To be liable, a RICO Complaint must allege facts which would, if proved, constitute acts indictable under the listed statutes. In a sense, RICO is derivative." *In re Gas Reclamation, supra* at 512. In the case at bar, plaintiffs base their RICO claims upon two such predicate acts: (1) mail fraud in violation of 18 U.S.C. § 1341, and (2) wire fraud in violation of 18 U.S.C. § 1343. Plaintiff must plead the basic elements of mail and wire fraud with sufficient particularity to state a claim under 18 U.S.C. § 1962.

### 1. Predicate Acts

The crime of mail fraud encompasses two elements: (1) a scheme or artifice to defraud, and (2) a mailing for the purpose of executing the scheme. *Bender v. Southland Corp.*, 749 F.2d 1205, 1215–16 (6th Cir.1984). A scheme to defraud must involve "intentional fraud, consisting in deception intentionally practiced." *Id.* at 1216 (quoting *Epstein v. United States*, 174 F.2d 754, 765 (6th Cir.1949) (emphasis original)). Wire fraud encompasses the same elements, differing from mail fraud only in the instrumentality employed. *Van Dorn Co. v. Howington*, 623 F.Supp. 1548 (N.D.Ohio 1985). Plaintiffs must demonstrate that the defendants made intentional misrepresentations to the plaintiffs, that the plaintiffs were deceived, and that the plaintiffs were induced to part with money or property in reliance on the alleged misrepresentations. *See Warren v. Manufacturers Nat'l Bank of Detroit*, 759 F.2d 542, 545 (6th Cir.1985).

■ As these predicate acts sound in fraud, they are subject to the specific pleading requirements of Fed.R.Civ.P. 9(b). *Bender*, 749 F.2d at 1216. Thus, plaintiffs must allege with particularity, the "circum-

stances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Rule 9(b) is especially important in a RICO case where a defendant is charged with fraudulent conduct based on criminal activity, *Slattery v. Costello*, 586 F.Supp. 162, 168 (D.D.C.1983), and threatened with treble liability, *Ralston v. Capper*, 569 F.Supp. 1575, 1581 (E.D.Mich.1983). Rule 9(b) requires a plaintiff to state the "time, place and contents of the false misrepresentations." *Bender*, 749 F.2d at 1216. "Further, a plaintiff must specify identity of the person making the representation." *Van Dorn*, 623 F.Supp. at 1555. The conclusory allegation that a defendant acted fraudulently is insufficient. *Walling v. Beverly Enterprises*, 476 F.2d 393, 396 (9th Cir.1973). Finally, a RICO complaint based on mail or wire fraud must "state with particularity the false statement of fact made by the defendant upon which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact." *Blount Financial Services, Inc. v. Heller & Co.*, 819 F.2d 151, 152 (6th Cir. 1987). The mail and wire fraud statutes also require a showing of intentional fraud. *Bender*, 749 F.2d at 1216. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49 (2nd Cir.) *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Although Rule 9(b) permits general averments as to intent, plaintiffs must nonetheless allege specific facts which give rise to a "strong inference" that defendants possess the requisite fraudulent intent. *Beck*, 820 F.2d at 50.

### a.

■ In paragraph 44 of plaintiffs' complaint, they allege defendants engaged in the following acts:

44A. On numerous occasions, used or caused to be used the United States mails in violation of 18 U.S.C. Section 1341, including without limitation the following occasions:

(1) Letter dated August 15, 1985, from Honigman, Miller, Schwartz & Cohn, executed by Sheldon Toll in Detroit, Michigan to Mayer Morganroth, Ho-

ward Weitzman, Richard Berger in other cities as well as in Michigan;

(2) Letter dated March 14, 1987, from Malcolm Schade to Robert Weiss and Mayer Morganroth as counsel for John Z. DeLorean on the letterhead of Mudge, Rose, Guthrie in New York to said recipients in Detroit, Michigan and Southfield, Michigan as well as to Joseph M. Weitzman in California.

(3) Letter dated June 24, 1987, from Malcolm Schade to Zachary Shimer in New York and Robert Weiss in Detroit, Michigan;

(4) Objections to Trustee's Motion for Order authorizing Trustee to settle from Malcolm Schade, individually and as an attorney for the joint receivers, Shewell and Cork, Price Waterhouse & Company, and the Unsecured Creditors Committee to Mayer Morganroth in Detroit and Southfield, Michigan; September 10 letter and objections from Sir Kenneth Cork and Paul Shewell to the Bankruptcy Court; Letter and pleading dated May 30, 1985 from Malcolm Schade to David Allard and to the Bankruptcy Court as well as to Howard Weitzman in California.

B. On numerous occasions, transmitted or caused to be transmitted telexes or other writings, signed or signals by wire in violation of 18 U.S.C. Section 1343 including without limitation the following occasions:

(1) Two or more telephone conversations in or about May of 1987, between Weiss in the United States and Michael G. Beeley at Logan in Logan, Utah;

(2) Telephone conversations between Weiss, Toll, Schade and Michael Beeley throughout 1985, 1986 and part of 1987;

(3) Telexes and telephone conversations between Schade between Schade and Cork Gully and Cork and Shewell throughout 1985, 1986 and part of 1987;

(4) Telephone conversations between Toll and Leslie A. Andress and Jerry Goldberg in the months of April, May and June of 1985;

(5) Two or more telephone conversations in or about February and March of 1984 between Toll and the Assistant United States Attorney, Toll being in the United States and the Assistant United States Attorney being in Los Angeles, California;

(6) Continued telephone conversations between Schade, Toll, Weiss, Levin during the years 1984, 1985, and 1986 in the United States.

Clearly, these allegations do not meet the pleading requirements of Fed.R.Civ.P. 9(b). Although plaintiffs state to some extent the time and place of the alleged false representations, they fail to allege with particularity the circumstances constituting fraud. In addition, plaintiffs fail to state the contents of the false representations. Finally, plaintiffs fail to allege specific facts which give rise to a "strong inference" that defendants possessed the requisite fraudulent interest. In making this finding, the Court notes that it granted plaintiffs' motion for leave to file an amended complaint in which plaintiffs claimed they would plead fraud with greater specificity. As can be seen above, however, plaintiffs' allegations of mail and wire fraud in the amended complaint fail to cure the defects of the original complaint.

Moreover, the Court requested, as it does in all RICO cases, that plaintiffs file a "Case Statement" in which the Court solicited specific information regarding plaintiffs' RICO claim. For example, question 5(c) asked:

If the RICO claim is based on the predicate

offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Identify the time, place and contents of the misrepresentations, and the identity of persons to whom and by whom the representations were made.

Plaintiffs responded by referring the Court to the amended complaint and to answer number 2 of the Case Statement. As stated above, paragraph 44 of the amended

complaint in which plaintiffs specifically allege mail and wire fraud does not comport with the pleading requirements of Fed.R. Civ.P. 9(b). Likewise, answer number 2 of the Case Statement fails to cure the defects of the amended complaint. While the Case Statement does make some allegations of alleged fraudulent conduct of the defendants, the specific allegations of mail and wire fraud fail to state the contents of the false misrepresentations. Furthermore, the plaintiffs have not identified, with respect to the claims of mail and wire fraud, that defendants acted fraudulently. Rather, plaintiffs have simply pled that on certain dates certain defendants communicated with others by means of the mails and wires. See amended complaint paragraph 44 and Case Statement 2(I)(A) and (B); 2(II)(A) and (B); 2(III)(A) and (B); and 2(IV)(A) and (B).

In sum, plaintiffs were given the opportunity to amend their complaint, yet they failed to allege the acts of mail and wire fraud with the requisite specificity. Plaintiffs were given further opportunity to cure the defective allegations by way of their RICO case statement. Again, plaintiffs failed to state their fraud claims with specificity. Finally, discovery has failed to reveal any fraud. The Court has given plaintiffs every opportunity to cure their defective allegations, but they have failed to do so. The Court is constrained to find that the predicate acts of racketeering activity alleged in paragraph 44 of the amended complaint fail for lack of specificity pursuant to Rule 9(b).

### b.

In addition to the "Racketeering activity" alleged in paragraph 44 of the Amended Complaint, plaintiffs have further accused defendants of numerous actions which plaintiffs contend were done in an effort to deprive plaintiffs of their property rights and assets. These accusations, contained in paragraph 45, subsections A through R, are not clearly pled as predicate acts of "Racketeering activity." For the purpose of deciding the motions presently pending, however, the Court will assume that the actions alleged in paragraph 45 are alleged as predicate acts of "Racketeering activity." For the reasons explained below, however, the Court is of the opinion that nothing alleged in paragraph 45 constitutes "Racketeering activity."

### i.

■ First, several of the subparagraphs in paragraph 45 of the Amended Complaint allege that various defendants made fraudulent representations to numerous third parties, on which the third parties relied, to the detriment of plaintiffs. Namely, Amended Complaint paragraph 45(D), (E) and (F) set forth alleged statements to JZD's former wife, Christina F. Thomopoulos; paragraph 45(G), (N), (O) and (Q) set forth alleged statements to Assistant United States Attorneys; and paragraph 45(P) and (Q) set forth alleged statements to judges. It would be overly burdensome for the Court to address each of the allegations mentioned above. The Court, however, has reviewed each one and for the reasons explained below, is of the opinion that none of them establish fraud by the defendants.

For example, in § 45(P), plaintiffs allege the following:

> Misrepresentations made by mail from MALCOLM SCHADE in New York to Judge J. Lawrence Irving in San Diego that the Judge was improperly injecting himself in settlement discussions with the parties, when MALCOLM SCHADE knew said representations were false, and said misrepresentations caused Judge Irving to withdraw from same in fall of 1986, to the detriment of JZD. Additionally the misrepresentations in Detroit and San Diego by MALCOLM SCHADE, ROBERT WEISS, SHELDON TOLL, HONIGMAN, MILLER, SCHWARTZ & COHN to JZD and Logan that they were desirous of having Judge Irving mediate a global resolution of the JZD and related company suits and claims and JZD and LOGAN and his attorneys relied upon said representations to JZD's and LOGAN's detriment.

Plaintiffs fail to show how said misrepresentation deceived either of them into part-

ing with money or property. *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987); *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987). Furthermore, there is no indication that the alleged misrepresentation was meant to have deceived plaintiffs of money or property. This is critical, because the goal of an allegedly fraudulent scheme must be to deprive the party claiming to have been deceived (here JZD and Logan), not someone else, of property or money. *United States v. Evans*, 844 F.2d 36, 37 (2nd Cir.1988); *United States v. Zauber*, 857 F.2d 137, 147 (3rd Cir.1988).

### ii.

■ Plaintiffs also allege fraud on the basis of statements allegedly made by defendants when they were adversaries or counsel for adversaries of plaintiffs. See Amended Complaint, paragraphs 45(B), (E), (H), (I), (J), (K), (L) and (P). Again, without addressing each subparagraph individually, the Court will explain why as a matter of law the statements do not constitute fraud.

It is wholly unbelievable that plaintiffs would rely on statements by their adversaries or counsel for their adversaries. As stated in *Bender v. Southland, supra,* "the scheme to defraud must involve misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *Bender*, 749 F.2d at 1216, *citing United States v. Van Dyke*, 605 F.2d 220, 225 (6th Cir.), *cert. denied*, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979). It is inconceivable to think plaintiffs would rely on any statements of their adversaries.

Furthermore, it appears that none of the statements were misrepresentations. For example, plaintiffs allege at paragraph 45(L) of their amended complaint:

Continual representations in 1983, 1984, 1985, and 1987 in New Jersey, New York and Detroit, Michigan that the restraints issued against JZD in New York were preliminary injunctions when in fact they were temporary restraining orders which never had been made into representa-

tions, said representations were relied upon by JZD to his detriment and were made by SHELDON TOLL, ROBERT WEISS, HONIGMAN, MILLER, SCHWARTZ & COHN and MALCOLM SCHADE on behalf of the enterprise.

This is a specious allegation. JZD was represented by counsel and was served with the orders in question. Further, in 1983 JZD litigated the issue of how the restraints should be construed and how long they should continue. He then stipulated to their continuation. (See Affidavit of Malcolm R. Schade, p. 12).

Another example of the specious nature of plaintiffs' fraud allegations appears in paragraph 45(J), wherein plaintiffs allege the following:

J. Statement made to Michael Beeley, President of Logan, by Defendants ROBERT WEISS and HONIGMAN, MILLER, SCHWARTZ & COHN in Logan, Utah and Detroit, Michigan that facts contained in an Affidavit that Defendants requested Michael Beeley sign on behalf of LOGAN were true when in fact said Defendants knew them to be untrue misrepresentations made in April of 1987.

This allegation has absolutely no merit. Weiss never represented to Beeley that the statements in the proposed affidavit were true. Although Weiss believed the contents of the affidavit to be true, he did not represent to Beeley that the contents were true. Instead, under cover of a letter dated May 11, 1987, Weiss requested that Richard S. Berger, attorney for Logan, discuss the proposed affidavit with Beeley and have it executed only "if Mr. Beeley determines that the content of the affidavit is true and accurate." (Affidavit of Robert B. Weiss, p. 3; Letter from Robert B. Weiss to Richard Berger, dated May 11, 1987).

Finally, plaintiffs have not submitted any facts to show that they reasonably relied on the supposed statements of adversary counsels. Plaintiffs cannot rest on their pleadings in opposing defendants' motions for summary judgment.

*iii.*

■ In two instances, plaintiffs allege fraud on the basis of omissions by defendants rather than affirmative misrepresentations. See Amended Complaint, paragraph 45(H) and (R). As a matter of law, these two allegations fail. A fraud claim arises out of a failure to disclose, however, only where the defendant owed a duty to make such disclosure. That duty arises only where plaintiff and defendant are in a fiduciary or similar relationship of trust. *See e.g., Pappas v. NCNB National Bank of North Carolina,* 653 F.Supp. 699, 703 (M.D.N.C.1987).

*iv.*

Paragraph 45(C) alleges as follows:

C. Defendants, ROBERT WEISS, HONIGMAN, MILLER, SCHWARTZ & COHN, on behalf of the enterprise, represented to Michael Beeley, President of Logan Manufacturing in Logan, Utah and Detroit, Michigan several times in 1986 and 1987 that they were in favor of an employee benefit bonus plan so that Michael Beeley would be influenced in favor of defendants and neglect his obligation to JZD and LOGAN and so that he would not oppose unlawful behavior of Cristina DeLorean Thomopoulos who had taken over JZD's directorship, chairmanship and operational heading of LOGAN with the aid and assistance of defendants herein.

Paragraph 45(C) does not allege a false or fraudulent misrepresentation. Furthermore, even if there was some sort of attempt to persuade the president of Logan to side with the Trustee, the conduct does not constitute a predicate act under RICO. 18 U.S.C. § 1961(1).

*v.*

■ Paragraph 45(A) alleges that defendants Cork Gully, Cork and Schade wrongfully placed DMCL into receivership in January, 1982, then promised to keep the manufacturing facility alive if JZD would invest more and finally scared away potential investors. At best, paragraph 45(A) alleges broken promises or interference with business expectancies. These are not RICO predicate acts.

As clearly indicated, plaintiffs have failed to properly or specifically allege predicate acts of a RICO violation. Furthermore, even after discovery, plaintiffs have failed to make a showing sufficient to establish the existence of an element essential to the complaint, i.e. "Racketeering activity." The Court notes the extensive discovery that has taken place in this case and the thousands of documents filed in support of and in opposition to the defendants' dispositive motions. Plaintiffs have produced no evidence of a RICO violation and there exists no genuine issue of material fact; defendants are entitled to judgment as a matter of law on the RICO count. Even though plaintiffs' RICO count fails as a matter of law for failure to plead a basic element of a RICO violation, the Court will briefly touch upon the alleged violations of 18 U.S.C. § 1962.

*2.*

Section 1964(c) of RICO provides a civil damage remedy only for those persons injured "by reason of a violation of § 1962." In the instant case, plaintiffs have alleged that defendants violated § 1962(a)–(d). The Court will first address the alleged violations of § 1962(a) and (b).

*a. 18 U.S.C. § 1962(a) and (b)*

■ Section 1962(a) prohibits "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, . . . in . . . the operation of, any enterprise. . . ." Section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise. . . ."

A plaintiff seeking civil damages for a violation of § 1962(a) must plead facts tending to show that he was injured by use or investment of racketeering income. Subsection (a) requires such a separate and traceable injury. *Craighead v. E.F. Hutton, Inc.,* 899 F.2d 485, 494 (6th Cir.1990).

*See Grider v. Texas Oil and Gas Corp.,* 868 F.2d 1147, 1149 (10th Cir.) *cert. denied,* —— U.S. ——, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); *Romano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 834 F.2d 523, 527, n. 8 (5th Cir.1987), *cert. denied,* 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988).

As stated by the court in *Grider:*

Significantly, the statute does not state that it is unlawful to *receive* racketeering income; rather, as the italicized language underscores, the statute prohibits a person who *has received* such income *from using and investing it* in the proscribed manner. As previously noted, § 1964(c) provides a civil damage remedy only for those persons injured "by reason of a violation of § 1962." It thus appears from the plain language of these two provisions that a plaintiff seeking civil damages for a violation of § 1962(a) must plead facts tending to show that he was injured by the use or investment of racketeering income. Injury from the racketeering acts themselves is not sufficient because § 1962(a) does not prohibit those acts.

*Grider,* 868 F.2d at 1149.

Similarly, in order to allege injury 'by reason of' § 1962(b), a RICO plaintiff must demonstrate that the defendant's acquisition or control of an interstate enterprise injured the plaintiff." *Midwest Grinding Company, Inc. v. Spitz,* 716 F.Supp. 1087, 1091 (N.D.Ill.1989). *See Shearson–Lehman v. American Express, Inc.,* 687 F.Supp. 177, 181 (E.D.Pa.1988); *Airlines Reporting Corp. v. Barry,* 666 F.Supp. 1311–1315 (D.Minn.1987) affirmed on other grounds, 825 F.2d 1220 (8th Cir.1987).

With respect to § 1962(a), plaintiffs have failed to plead the basic elements of the alleged predicate acts (racketeering activity) with sufficient particularity to state a claim. *Craighead v. E.F. Hutton & Co., Inc., supra.* If plaintiffs had alleged the necessary predicate acts, their § 1962(a) claim would still fail because they have not alleged, nor have they submitted, any evidence of injuries stemming directly from defendants' alleged use or investment of their illegally obtained income. Subsection (a) requires that a separate traceable injury and plaintiffs have alleged only injuries traceable to the alleged predicate acts. *Craighead,* 899 F.2d at 494. *See Grider,* 868 F.2d at 1149; *Romano,* 834 F.2d at 527.

Plaintiffs allege specifically as follows: That the defendants received income which was derived directly and/or indirectly from a pattern of racketeering activity in which the defendants have participated as a principal within the meaning of Section 2 Title 18, U.S.C. to use and/or invest directly or indirectly parts of said income in the proceeds of such income in the acquisition of an interest in and the establishment or the operation of an enterprise when engaged in activities of which affect interstate or foreign commerce is prohibited under 18 U.S.C. § 1962(a).

Amended Complaint at paragraph 50.

At most, paragraph 50 alleges that defendants received income from the alleged racketeering activity and invested the income to establish an enterprise that affected interstate commerce. Nowhere, however, do plaintiffs allege injury stemming from defendants' use or investment of their illegally obtained income. *Craighead,* 899 F.2d at 494. The Court carefully scrutinized, to no avail, plaintiffs' Amended Complaint and their RICO case statement attempting to locate any allegation of injury stemming from defendants' alleged use or investment of the illegally obtained income.

More importantly, for purposes of deciding the motions for summary judgment now pending, plaintiffs have not come forward with any evidence to support the § 1962(a) allegation. Plaintiffs have not come forward with any evidence, in opposition to defendants' motions, that indicates defendants received any income from the alleged racketeering activity, that defendants invested income in an enterprise, or that plaintiffs were injured by reason of the alleged use or investment of racketeering income. Extensive discovery has taken place in this case; plaintiffs have not produced any credible evidence that indicates

that any of the defendants violated § 1962(a). There are no genuine issues of material fact that would require submission of this case to a jury.

Similar to § 1962(a), in order to allege injury "by reason of" § 1962(b), a RICO plaintiff must demonstrate that the defendant's acquisition or control of an interstate enterprise injured plaintiff. *Midwest Grinding Co., Inc.*, 716 F.Supp. at 1090. In other words, injury from the racketeering acts themselves is not sufficient; rather, a plaintiff must plead facts tending to show that the acquisition or control of an interest injured plaintiff.

In the case at bar, plaintiffs allege as follows:

> That the defendants through a pattern of racketeering activity have acquired and maintained directly and indirectly an interest in or control of the enterprise, said enterprise engaged in and involved in the activities of which affect the interstate or foreign commerce is prohibited under 18 U.S.C. § 1962(b).

As with their § 1962(a) claim, plaintiffs' § 1962(b) claim essentially states that plaintiffs were injured by defendants' acts of racketeering. The amended complaint contains conclusory allegations which parrot each of the four parts of § 1962. Plaintiffs' complaint fails to allege that their injury resulted from the acquisition or control of an interest by defendants. Relevant to the summary judgment motions, plaintiffs have failed to produce evidence that defendants controlled an interstate enterprise or that plaintiffs were injured by reason of the acquisition or control of an interstate enterprise.

In sum, the proximate cause of plaintiffs' injuries as alleged in their complaint is defendants' alleged acts of racketeering themselves. Therefore, plaintiffs' RICO claims brought under § 1962(a) and (b) do not satisfy the requirement that the injury be "by reason of" the use or investment, or the acquisition or control of an interest. Moreover, plaintiffs have failed to come forward with any evidence in response to defendants' motions which establishes any

activity by defendants in violation of § 1962(a) or (b).

*b.*

Plaintiffs have also alleged violation of § 1962(c). Section 1962(c) provides:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Section 1962(c) differs significantly from either § 1962(a) or (b) in that it specifically prohibits the conduct of "the enterprise's affairs through a pattern of racketeering," § 1962(c), thus making unlawful the racketeering activity itself. *Midwest Grinding Co., Inc.*, 716 F.Supp. at 1091. *See also Grider*, 868 F.2d at 1150.

As discussed thoroughly above, plaintiffs have failed to properly or specifically allege or come forward with any evidence of a pattern of racketeering activity on the part of the defendants.

*c.*

Finally, plaintiffs have alleged a conspiracy between the defendants under § 1962(d). Section 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of this subsection." 18 U.S.C. § 1962(d). A claim cannot be made under § 1962(d) in the absence of a viable claim under § 1962(a), (b), or (c). Since no claim has been made under any of those sections in the present case, the § 1962(d) claim also fails as a matter of law. Accordingly, defendants' motions for summary judgment on plaintiffs' RICO allegation in Count II of the Amended Complaint is GRANTED.

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Count III of plaintiffs' Amended Complaint alleges intentional infliction of emotional distress. This count is based

upon the allegedly malicious litigation against JZD. Count III is without merit.

The tort of intentional infliction of emotional distress requires proof of "(1) 'extreme and outrageous' conduct, (2) intent or recklessness, (3) causation, and (4) 'severe emotional distress.'" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602, 374 N.W.2d 905 (1985). The element of extreme and outrageous conduct requires conduct "beyond all possible bounds of decency, ... regarded as atrocious, and entirely intolerable in a civilized community." *Roberts*, 422 Mich. at 603, 374 N.W.2d 905 (quoting Restatement Torts, 2d § 46 comment d).

Plaintiffs have no evidence that any of the defendants committed any extreme and outrageous, intolerable, or atrocious acts. There can be no claim for tortious infliction of emotional distress where the defendants' alleged misconduct consists of actions taken in legal proceedings. *Early Detection Center, P.C. v. New York Life Insurance Co.*, 157 Mich.App. 618, 626–627, 403 N.W.2d 830 (1986) (filing of a lawsuit is privileged and, even if the suit is groundless, it cannot be considered the sort of outrage or atrocity necessary for a claim of infliction of emotional distress). Statements connected with legal proceedings are privileged and so cannot support liability for infliction of emotional distress.

■■■ In addition to Count III being legally insufficient, it is also factually deficient. Specifically, plaintiffs cannot establish the element of severe emotional distress. JZD admitted at his deposition that he had suffered no emotional illness and he was "as solid and stable mentally and as anybody you're ever going to meet in your life." (Deposition of JZD, January 5, 1990 at pg. 297). Therefore, defendants' motions for summary judgment with respect to Count III of plaintiffs' Amended Complaint is GRANTED.

## D. INTERFERENCE WITH CONTRACTUAL OR BUSINESS RELATIONSHIPS

■■■ Plaintiffs' interference claim, Count IV of the Amended Complaint, generally alleges that the defendants, through various acts committed during the course of the numerous court proceedings, interfered with plaintiffs' contractual and business relationships. Specifically, plaintiffs allege that defendants' actions caused the diminution of the value and a loss on the sale of the Pauma Valley ranch and defendants caused certain third-parties to back out of the sale of JZD's New York Co-op.

■■■ To establish a prima facie case of tortious interference with contractual or business relationships, plaintiffs must show: (1) the existence of a contract or business relationship; (2) defendants' knowledge of the contract or relationship; (3) an intentional act of interference causing a breach or termination of the business relation; and (4) resultant damage to the plaintiffs. *Michigan Podiatric Medical Ass'n. v. National Foot Care Program Inc.*, 175 Mich.App. 723, 735, 438 N.W.2d 349 (1989). In addition, the act of interference must be "improper"—plaintiffs must prove "either that defendant's conduct was wrongful per se or undertaken illegally and without justification." *Id.* at 737, 438 N.W.2d 349. *See also, Trepel v. Pontiac Osteopathic Hospital*, 135 Mich.App. 361, 376–377, 354 N.W.2d 341 (1984).

Plaintiffs' complaint with respect to the New York Co-op appears to be predicated on restraining orders obtained by defendants. However, even if the court orders did interfere with the sale of the New York Co-op or any other business relationships, defendants' actions in obtaining the court orders cannot support a cause of action.

■■■ Filing a lawsuit, pleading, or motion in court does not constitute the type of unlawful conduct necessary to support a claim for interference with contractual or business relationships. The court in *Early Detection Center, supra,* held that acts and statements during litigation—even if groundless—cannot give rise to a claim for interference with business relationships. 157 Mich.App. at 631, 403 N.W.2d 830. The absolute privilege for communications in connection with judicial proceedings also bars such a claim when the alleged acts of interference involve use of the courts.

*Weissman v. Hassett,* 47 B.R. 462, 468 (D.C.1985); *Sanders v. Leeson Air Cond. Corp.,* 362 Mich. 692, 695, 108 N.W.2d 761 (1961). Further, JZD is collaterally estopped from claiming the court orders were improper. Finally, there was a supervening cause of plaintiffs' alleged injury: the courts that issued the orders restraining JZD's assets.

Similar to the alleged interference with the New York Co-op, plaintiffs' complaint with respect to the Pauma Valley ranch results from alleged wrongful acts set out in all of the paragraphs preceding the interference count in the Amended Complaint, which are incorporated by reference.

As already demonstrated, the majority of the allegedly wrongful acts were taken by defendants pursuant to their statutory duties or pursuant to court order in their capacities as officers of the DMC estate, or constituted statements made in the course of judicial proceedings, or both. Defendants cannot be liable for tortious interference with business relationships on the basis of these acts because they are entitled to derived judicial immunity or are protected by the judicial proceedings privilege. *See e.g., Roberts v. Auto–Owners Ins. Co.,* 422 Mich. 594, 603, 374 N.W.2d 905 (1985) (quoting Restatement (Second) of Torts § 46 comment d, at 73); *Meyer v. Hubbell,* 117 Mich.App. 699, 324 N.W.2d 139, 143 (1982).

Moreover, JZD has no standing to assert a claim for interference with the sale of the Pauma Valley property. Both the initially proposed and later consummated sales of the property were proposed or consummated by Howard L. Weitzman, not by JZD. In fact, JZD did not own the Pauma Valley property after March 6, 1984, when he delivered a quit-claim deed to Mr. Weitzman. Accordingly, neither JZD nor Logan were impaired, even assuming for the sake of argument that someone did improperly interfere with the sale of the property.

Of equal importance, the record simply does not support plaintiffs' claim that there was any unlawful or improper interference with Mr. Weitzman's attempts to sell the property. Plaintiffs have made much during discovery of their claim that a threatening phone call was allegedly made to a potential purchaser and that a telephone call purportedly was recorded on Schade's home telephone bill as being made to the home of the Wilcoxens, one of the potential purchasers of the Pauma Valley property. But, plaintiffs never sought to depose the Wilcoxens or otherwise establish what was said in the telephone call. Thus, there is no competent proof that a threatening call was made.

Furthermore, Schade has categorically denied making that or any other telephone call to the Wilcoxens, and the record establishes that he was not at his home at the time of the alleged call. Schade's Answers to Plaintiffs' First Set of Interrogatories Nos. 14, 15; Schade's Answers to Plaintiffs' Third Set of Interrogatories No. 13. JZD has admitted that he does not know that it was Schade that made the alleged call, and, in fact, that he does not know who made it. Given Schade's unequivocal denial that he ever made any threatening telephone call to the Wilcoxens, it is incumbent upon plaintiffs to produce competent proof that Schade made the alleged call and that he threatened the Wilcoxens. Plaintiffs cannot simply rely or surmise in an effort to create a triable issue of fact. *See e.g., Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

Finally, plaintiffs' claim for contractual interference on the basis of the allegedly threatening call is barred by the statute of limitations. The limitations period for such a claim is three years in Michigan. *See* Mich.Comp.Laws Ann. § 600.5805(8) (West 1987); *James v. Logee,* 150 Mich.App. 35, 388 N.W.2d 294, 295 (1986). The complaint in this action was filed on April 15, 1988. The alleged interference occurred on September 25, 1984, which is outside the limitations period in either jurisdiction. Defendants' motions for summary judgment as to Count IV of plaintiffs' Amended Complaint is hereby GRANTED.

## CONCLUSION

For the reasons stated above, defendants' Motions for Summary Judgment are GRANTED and plaintiffs' Amended Complaint is hereby DISMISSED.

IT IS SO ORDERED.